(No. 79305.—

KIMBERLY SNOVER *et al.*, Appellants, v. BRIDGET
J. McGRAW, Appellee.

*Opinion filed June 20, 1996.*

HARRISON, J., joined by HEIPLE, J., dissenting.

Paul W. Grauer and Randall W. Graff, of Schaumburg, for appellants.

Gabrielle S. Davis, of Jesmer & Harris, of Chicago, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

The issue presented in this appeal is whether a jury is required to make an award for pain and suffering where it awards damages for pain-related medical expenses. The underlying action is a negligence action brought by plaintiffs, Kimberly Snover and her mother, Carol Snover, to recover for personal injuries suffered by Kimberly in an automobile collision. At the time of the collision, Kimberly was a passenger in a car driven by defendant, Bridget McGraw. After the collision, Kimberly incurred medical expenses, part of which both she and her mother paid. The jury returned verdicts in favor of plaintiffs, awarding $366 to Kimberly Snover and $1,235.65 to her mother, Carol Snover. Plaintiffs appealed, seeking a new trial on the issue of damages. The appellate court affirmed. No. 1—94—1880 (unpublished order under Supreme Court Rule 23). We granted plaintiffs' petition for leave to appeal (155 Ill. 2d R. 315). We affirm.

## FACTS

On September 23, 1989, Kimberly and defendant ap-

proached a four-way intersection in a car driven by defendant. The intersection had two-way stop signs, and defendant was required to yield to cross-traffic. After defendant's car entered the intersection, another vehicle struck defendant's vehicle on the passenger's side. At trial, defendant stated that she did not realize the intersection had two-way stop signs only and that she did not see any cross-traffic before the collision. Defendant had earlier pleaded guilty to failure to yield the right-of-way. The issue of liability was not strongly contested at trial, and the trial court directed liability in favor of plaintiffs.

Rescue personnel arrived at the scene of the collision. Kimberly complained of abdominal pain. The rescue personnel found no apparent bruising or swelling to the abdomen although Kimberly testified that she later developed a bruise on her stomach. An ambulance took Kimberly to a hospital, where she received emergency room treatment. Abdominal X rays were taken and proved negative. Kimberly was released from the hospital later that same day. The emergency room record showed no complaints of neck pain. It also showed that Kimberly had full range of motion in her neck.

Kimberly testified about the effect of the collision on her school activities. She stated that she was on her school's tennis team and missed three days to one week of tennis because of the collision. After that, she was able to play tennis regularly. Kimberly also missed three days to one week of gym class. In addition, Kimberly was on the track team and was able to participate in that activity.

Kimberly went to see her personal doctor two days after the collision complaining of headaches. At trial, Kimberly stated that she had suffered headaches once or twice per month prior to the collision. Based on the headaches, her doctor ordered a CAT scan. The CAT scan showed no sign of head injury.

On January 22, 1990, about four months after the collision, Kimberly went to see a neurologist, Dr. Gene Neri, complaining of headaches, dizziness, and neck pain. Dr. Neri diagnosed Kimberly as suffering from a cervical strain and recommended physical therapy. After this initial session, Kimberly went to nine physical therapy sessions with Dr. Neri between January 29, 1990, and February 21, 1990. During this time period, Kimberly reached the age of 18 and became legally responsible for her own medical bills. The jury's verdicts of $366 in favor of Kimberly and $1,235.65 in favor of her mother are exactly equal to the total of all medical bills incurred from the date of the collision through the final physical therapy session on February 21, 1990. The jury did not award any additional amount of damages for medical expenses incurred after February 21 or for any pain and suffering.

At trial, plaintiffs did seek to recover for medical damages incurred after February 21, 1990. On December 20, 1990, over a year after the car collision, Kimberly went to see a chiropractor, Dr. Traven. He diagnosed Kimberly as suffering from a cervical sprain. Kimberly received physical therapy treatments from Dr. Traven between January 2, 1991, and June 2, 1992. In August 1992, Kimberly returned to Dr. Neri, the neurologist, for more physical therapy treatment.

As indicated above, the jury did not award damages for either the medical treatment by Dr. Traven or the 1992 treatment by Dr. Neri. This failure to award damages may have been due, in part, to other possible neck injuries suffered by Kimberly after the 1989 collision. At trial, Kimberly stated that she had been involved in two subsequent car collisions on April 22, 1991, and September 25, 1991, and had suffered a weight lifting injury on January 31, 1991. It was argued that these incidents aggravated any existing neck injury.

Both Dr. Neri and Dr. Traven testified as experts for the plaintiffs. Both testified that Kimberly's neck pain was related to the 1989 collision. Both also testified that their respective treatments were reasonable and necessary to relieve the neck pain.

Dr. Hall, an orthopedic surgeon and the expert witness for the defense, disagreed with plaintiffs' experts. Dr. Hall did not personally examine Kimberly, but he reviewed Kimberly's medical records. Dr. Hall found no objective manifestations of neck injury, and in his opinion, Kimberly's neck injury was not causally connected to the collision. Dr. Hall stated that the emergency room treatment immediately after the collision was a reasonable and necessary medical expense. In addition, Kimberly's visit to her personal physician two days after the collision was reasonable and necessary. In Dr. Hall's opinion, all other medical expenses, including Kimberly's sessions with Dr. Neri and Dr. Traven, were not related to the 1989 collision and were not reasonable and necessary.

The jury awarded limited damages for medical out-of-pocket expenses. It awarded damages for the medical bills incurred from the date of the collision through Kimberly's initial physical therapy sessions with Dr. Neri, ending on February 21, 1990. In addition, in the itemized verdict form, the jury specifically awarded no damages for pain and suffering. Plaintiffs filed a motion for a new trial in the trial court, challenging the jury's failure to award damages for pain and suffering. This motion was denied by the trial court. On appeal, the appellate court affirmed. On appeal to this court, plaintiffs argue that the jury's verdicts are inconsistent because the jury awarded damages for pain-related medical expenses but awarded no damages for pain and suffering.

## ANALYSIS
Plaintiffs argue that they are entitled to damages

for pain and suffering. Specifically, plaintiffs contend that the jury ignored evidence of headaches, abdominal pain, and neck pain. With respect to the headaches, plaintiffs argue that the jury reimbursed Kimberly for the cost of a CAT scan, which was needed for diagnosis. With respect to neck pain, plaintiffs argue that the jury awarded damages relating to Kimberly's physical therapy sessions with Dr. Neri in 1990 and that these sessions were needed to treat Kimberly's neck pain. According to plaintiffs, the jury acted inconsistently in awarding these pain-related medical expenses but in failing to award damages for pain and suffering. Thus, plaintiffs argue, a new trial on the issue of damages is required.

This court has not previously addressed the precise issue raised by plaintiffs. The decisions of the appellate court on the issue are in conflict. Although the appellate opinions are not binding on this court, their reasoning is instructive.

In support of their position, plaintiffs rely primarily on *Hinnen v. Burnett*, 144 Ill. App. 3d 1038 (1986). The facts in *Hinnen* are similar to those present here. In *Hinnen*, the plaintiff was involved in an automobile collision. The jury awarded the plaintiff $2,500 for pain-related medical expenses relating to a neck injury but specifically made no award for pain and suffering. The *Hinnen* court first noted that the testimony presented at trial suggested that the neck injury was not serious and that the plaintiff had little trouble returning to her everyday activities. *Hinnen*, 144 Ill. App. 3d at 1045. The appellate court also noted that the jury could reasonably conclude that the evidence of pain and suffering was minimal. *Hinnen*, 144 Ill. App. 3d at 1045-46. Thus, the evidence supported the jury's failure to award damages for pain and suffering.

The *Hinnen* court nevertheless remanded the cause for a new trial on the issue of damages:

"[T]he verdict is irreconcilably inconsistent. If the jury believed that plaintiff had no compensable pain and suffering, its award of pain-related expenses was wholly unwarranted and contrary to the manifest weight of the evidence. Conversely, if it believed that plaintiff's pain and suffering were sufficiently serious to warrant expenditures for pain medication and physical therapy, its failure to award her compensation for that pain and suffering means that it disregarded a proven element of damages." *Hinnen*, 144 Ill. App. 3d at 1046.

Under the *Hinnen* analysis, any award of pain-related expenses without a corresponding award for pain and suffering requires reversal *per se*, even if the evidence of pain and suffering is insignificant or strongly disputed. See also *Kumorek v. Moyers*, 203 Ill. App. 3d 908 (1990); *Urban v. Zeigler*, 261 Ill. App. 3d 1099 (1994).

Other panels, however, have taken a more flexible approach. These decisions have upheld jury verdicts where the evidence of pain and suffering was minimal. In these cases, the nature and extent of the plaintiffs' injuries were questionable. Because the plaintiffs' injuries were not serious, the jury could reasonably infer that any pain and suffering was not significant. These panels have therefore considered the strength of the evidence of injury and of pain and suffering. See *Paulan v. Jett*, 190 Ill. App. 3d 497 (1989); *Chrysler v. Darnall*, 238 Ill. App. 3d 673 (1992).

One panel specifically criticized the majority analysis in *Hinnen*. In *Buttita v. Stenberg*, 246 Ill. App. 3d 1012 (1993), the court maintained that a jury verdict should be upheld given the jury's discretionary role in assessing damages and given the fact that no error of law was alleged. Specifically, the court stated:

"We believe that the *Hinnen* majority departed from these well-settled principles of review. Where the pain and suffering element of plaintiff's evidence is weak or contested, as is often the case in a rear-end automobile accident case, the jury may merely reject plaintiff's pain

and suffering evidence as unpersuasive or decide that a separate pain and suffering award is unjustified. Simultaneously, the jury may decide to compensate the plaintiff for her out-of-pocket medical expenses, including pain-related medical expenses. In the proper case, there is no inherent inconsistency in such an award. We agree with the *Hinnen* dissent that, where such an award finds justification in the evidence presented and does not violate one of the well-settled principles of review, it should be upheld on review. In short, damages are the jury's prerogative, not the appellate court's." *Buttita*, 246 Ill. App. 3d at 1024.

We further note that other panels have cited *Hinnen* with approval but are factually distinguishable based on the evidence of pain and suffering presented. In those cases, the jury's award of $0 for pain and suffering was not supported by the evidence. See *Healy v. Bearco Management, Inc.*, 216 Ill. App. 3d 945 (1991) (overturning a jury verdict of $120,767.31 for medical expenses and $0 for pain and suffering in connection with a back injury where the plaintiff introduced evidence of lengthy hospital stays, testimony concerning how the injury had limited her former activities, and testimony from numerous experts regarding the nature of her injury and her pain and suffering); *Rice v. Merchants National Bank*, 213 Ill. App. 3d 790 (1991) (overturning a jury verdict of $48,000 in medical expenses and $0 for pain and suffering where the plaintiff presented expert testimony that she suffered a fractured vertebra leading to permanent back pain, a broken pelvic bone, and torn knee ligaments). The evidence in these cases established significant injuries, which, in turn, justified and required an award for pain and suffering.

We next consider decisions from other jurisdictions. As with our appellate court, the decisions from other jurisdictions are conflicting. Some courts have held that an award for medical expenses without an award for

pain and suffering is inconsistent and requires reversal *per se*. See, *e.g., Mason v. District Board of Broward College*, 644 So. 2d 160 (Fla. App. 1994); *Kepley v. Kim*, 843 P.2d 133 (Colo. App. 1992); *Cowan v. Flannery*, 461 N.W.2d 155 (Iowa 1990); *Bienvenu v. State Farm Mutual Automobile Insurance Co.*, 545 So. 2d 581 (La. App. 1989); *Robertson v. Stanley*, 285 N.C. 561, 206 S.E.2d 190 (1974). Other courts, however, have used a more flexible approach based on an examination of the evidence. These courts have upheld jury verdicts where the evidence of injury was slight or conflicting, and the jury could reasonably conclude that plaintiff experienced no significant pain and suffering or, if he did, that it was *de minimis*. See, *e.g., Catalano v. Bujak*, 537 Pa. 155, 642 A.2d 448 (1994); *Hinson v. King*, 603 So. 2d 1104 (Ala. Civ. App. 1992); *Symon v. Burger*, 528 N.E.2d 850 (Ind. App. 1988); *Wheeler v. Huston*, 288 Or. 467, 605 P.2d 1339 (1980); *Hunter v. Sorensen*, 201 Neb. 153, 266 N.W.2d 529 (1978); *Jahnke v. Smith*, 56 Wis. 2d 642, 203 N.W.2d 67 (1973); *Randles v. Lowry*, 4 Cal. App. 3d 68, 84 Cal. Rptr. 321 (1970); see generally Annotation, *Validity of Verdict Awarding Medical Expenses to Personal Injury Plaintiff, but Failing to Award Damages for Pain and Suffering*, 55 A.L.R.4th 186 (1987).

We further note that a jury's award of damages is entitled to substantial deference. The determination of damages is a question of fact that is within the discretion of the jury. See *Luther v. Norfolk & Western Ry. Co.*, 272 Ill. App. 3d 16, 28 (1995); *Marchese v. Vincelette*, 261 Ill. App. 3d 520, 529 (1994). This court will not upset a jury's award of damages "unless a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered." *Gill v. Foster*, 157 Ill. 2d 304, 315 (1993); see also *Hollis v. R. Latoria Construction, Inc.*, 108 Ill. 2d 401, 407 (1985).

After considering the authorities and given the traditional deference to the jury's role in determining damages, we hold that a jury may award pain-related medical expenses and may also determine that the evidence of pain and suffering was insufficient to support a monetary award. We believe that it lies within the jury's power and discretion to award nothing for pain and suffering in this circumstance where the evidence supports such an award. Accordingly, we find that the jury's verdict is not inconsistent.

In this case, Kimberly testified that she was on her school's tennis team and missed a few days of tennis because of the collision. After that, she was able to play tennis every day. Kimberly also missed several days of gym class. Kimberly had few, if any, objective symptoms of injury; she relied instead on subjective complaints of pain. The defense called an expert who strongly disputed the nature and extent of the injuries and of any pain and suffering. The jury determines the credibility of the witnesses and the weight to be given their testimony. *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992). Credibility was significant in this case in light of Kimberly's delay in seeking some of the treatment, her ability to continue participating in everyday activities, the subjective nature of her complaints, and the conflicting expert testimony. Based on the evidence, the jury could have simply concluded Kimberly suffered only minor injury and awarded damages accordingly.

We must consider this situation realistically. The jury's computations when determining a dollar amount for damages are not precise and are subject to compromise. An award for pain and suffering is especially difficult to quantify. *Caley v. Manicke*, 24 Ill. 2d 390, 392-93 (1962). Furthermore, unlike economic damages, such as medical expenses, an award for pain and suffering is not as readily calculable in money and jurors must draw on

their real life experiences in making an award. 2 D. Dobbs, Law of Remedies § 8.1(4), at 382 (2d ed. 1993). The record contains no suggestion of mistake, confusion, partiality, or prejudice on the part of jury. Plaintiffs have alleged no error of law, such as the improper admission of evidence, which would affect the jury verdict. The jury was well within the confines of the evidence in concluding that Kimberly suffered only minimal discomfort, which was not compensable.

We emphasize that, in other cases, an award of medical expenses without a corresponding award for pain and suffering may be inappropriate. If the evidence clearly indicates that plaintiff suffered serious injury, a verdict for medical expenses alone could be inconsistent. This determination is best made by the trial court in a post-trial motion. The trial court's ruling on a motion for a new trial will not be reversed unless the trial court abuses its discretion. *Maple*, 151 Ill. 2d at 455.

In making this determination, the trial court should consider the distinction between subjective complaints of injury and objective symptoms. In cases in which a plaintiff's evidence of injury is primarily subjective in nature and not accompanied by objective symptoms, the jury may choose to disbelieve the plaintiff's testimony as to pain. In such a circumstance, the jury may reasonably find the plaintiff's evidence of pain and suffering to be unconvincing.

Finally, plaintiffs raise, for the first time on appeal, a claim that Kimberly should have been awarded damages for disability. This argument was not specifically raised in the motion for new trial or in the appellate court. Accordingly, the issue is waived and we decline to address it. See *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78, 90-91 (1994).

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

450

JUSTICE HARRISON, dissenting:

For the reasons explained in *Hinnen v. Burnett*, 144 Ill. App. 3d 1038, 1046 (1986), the jury's verdict is irreconcilably inconsistent and must be set aside. There is no dispute that plaintiff received physical therapy from Dr. Neri to treat her complaints of headache, dizziness, and neck pain. If she was entitled to recover for this pain-related medical treatment, as the jury found she was, she was also entitled to damages for the underlying pain and suffering that Dr. Neri was attempting to treat. There is no logical basis for allowing one without the other. Any pain severe enough to justify medical care is severe enough to warrant compensation.

The soundness of this approach has been repeatedly recognized by the appellate court (see *Urban v. Zeigler*, 261 Ill. App. 3d 1099 (1994); *Rice v. Merchants National Bank*, 213 Ill. App. 3d 790, 802-03 (1991); *Kumorek v. Moyers*, 203 Ill. App. 3d 908, 912-13 (1990); *Schranz v. Halley*, 128 Ill. App. 3d 125, 126-27 (1984)), including the second district, which adopted an opinion written by the same justice who authored the majority's disposition in this case and specifically followed *Hinnen* (see *Healy v. Bearco Management, Inc.*, 216 Ill. App. 3d 945, 954-55 (1991)). Although *Hinnen* has been distinguished on its facts (see *Knight v. Lord*, 271 Ill. App. 3d 581, 591 (1995); *Butkewicz v. Chicago Transit Authority*, 252 Ill. App. 3d 914, 919-20 (1993); *Craigmiles v. Egan*, 248 Ill. App. 3d 911, 928 (1993); *Perry v. Storzbach*, 206 Ill. App. 3d 1065, 1068-69 (1990); *Griffin v. Rogers*, 177 Ill. App. 3d 690, 694 (1988)), only one panel in one district has expressly refused to follow it (see *Buttita v. Stenberg*, 246 Ill. App. 3d 1012 (1993)), and its discussion was merely *dicta*. Disavowal of *Hinnen* was completely unnecessary to the court's disposition of the case, for unlike *Hinnen*, the plaintiff had not been awarded all of her medical expenses and it was unclear whether the amount she did

receive included any expenses related to her pain. *Buttita*, 246 Ill. App. 3d at 1022.

In rejecting *Hinnen* and the virtually unbroken line of cases that have followed it, my colleagues rely on "the traditional deference to the jury's role in determining damages." 172 Ill. 2d at 448. That reliance is misplaced. As the majority itself acknowledges, the deference we afford jurors has never been understood to mean that they are free to disregard a proven element of damages. See *Gill v. Foster*, 157 Ill. 2d 304, 315 (1993). In the case before us, pain and suffering were clearly established. If they had not been, there would have been no basis for the jury's award of damages for plaintiff's pain-related therapy sessions. Some award for pain and suffering should therefore have been granted.

My colleagues reason that even if plaintiff did experience pain and suffering as she claimed, the jury may have concluded that it was too insignificant to merit compensation. 172 Ill. 2d at 448. Again, however, the majority misses the basic inconsistency in the jury's verdict. If the jury believed that plaintiff was not really suffering, why did it agree to award her damages for so many therapy sessions? If she was just malingering, the jury should not only have denied her damages for pain and suffering, it should also have limited her compensation to the cost of her initial care and diagnosis and disallowed the cost of all of the subsequent therapy sessions. It did not do so, and my colleagues' appeal to notions of flexibility and realism cannot resolve this contradiction.

For the foregoing reasons, I would reverse the judgments of the appellate and circuit courts and remand the cause for a new trial on the issue of damages. I therefore dissent.

JUSTICE HEIPLE joins in this dissent.