No. 3-00-0088

______________________________________________________________________________

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

FLOYD R. HULBERT, Individually ) Appeal from the Circuit Court

and as Special Administrator of ) for the 14
th
 Judicial Circuit,

the ESTATE OF LOUELLA HULBERT, ) Rock Island County, Illinois

Deceased, )

Plaintiff-Appellant, ) No. 97-L-66

)

)

)

RICHARD W. YORK, ) Honorable John Donald O'Shea

Defendant-Appellee )

______________________________________________________________________________

Modified Upon Denial of Rehearing

JUSTICE McDADE delivered the opinion of the court: 

______________________________________________________________________________

Plaintiff, Floyd Hulbert, appeals from the denial of his motion for a new trial following a jury verdict awarding him damages for pain and suffering and for medical expenses but no relief for disability and for aggravation of a pre-existing condition.  The Court finds no abuse of discretion by the trial court.  The decision is affirmed.

FACTS

On March 28, 1995, plaintiff, Floyd Hulbert (Floyd), was driving a car on Barstow Road in Rock Island County, Illinois, in which his wife, Louella Hulbert (Louella),  was a passenger.  Their vehicle was rear-ended by one driven by defendant, Richard York.  They were seen at the emergency room at Illini Hospital and released.  On the following day, Floyd took Louella to her doctor, Noel Lee, M.D.  (Dr. Lee).    

Although Dr. Lee had never previously examined or treated Floyd, he did order X-rays of his cervical spine on April 28, 1995, approximately a month after the accident.  The X-rays were negative for any fracture, and Dr. Lee recommended a course of therapy which Floyd undertook.  He returned to Dr. Lee on May 16, 1995, and was advised that, if his problems persisted, he should return for a "sed rate" which would show whether there was increased inflammation.  Floyd did not complain further and no sed rate was ever taken.  Floyd neither sought nor received additional treatment from Dr. Lee or any other physician during the four years preceding the trial.   He testified that his pain resolved itself within eight to ten months. 

Floyd, who was 68 at the time of the accident,  had suffered since approximately age 17 from "ankylosis spondylitis"--a permanent and debilitating condition.  Dr. Lee described the condition as 

"a type of arthritic process that's related to rheumatoid arthritis that causes the spine to not be able to move.  It fuses.  Actually, it's a condition more of the ligaments adjoining the bones than the bones themselves." 

During the years, traumatic incidents had exacerbated the effects of the condition.  

Prior to April of 1995, Dr. Lee had never treated Floyd for the ankylosis spondylitis or for anything else.  He had, however, had some opportunity for casual observation when Floyd had brought his mother and his wife in for medical care.

By contrast, Louella had been a patient of Dr. Lee since November of 1993.  She suffered from hypertension (high blood pressure), arrhythmia (heart problem), asthma, and chronic 

degenerative cervical arthritis.   She died on December 29, 1998 of a stroke unrelated to the accident.  Louella's claims proceeded with Floyd serving as Special Administrator of her estate.

The claims of both Louella and Floyd were tried to a jury.  The only medical professional who offered testimony was Dr. Lee.  A judgment was entered in favor of plaintiffs and against Defendant on the issues of liability (primary and contributory fault) at the close of plaintiffs' evidence.  The case proceeded and was submitted to the jury solely on the matter of damages.

During the course of their deliberations, the jurors sought and were provided with the deposition transcript of Dr. Lee.   Using the prepared verdict forms, the jury made the following awards:

Louella Floyd

Aggravation of Pre-existing Condition 
$2,500 $      0

Disability 
  1,000        0

Pain and Suffering 
  2,500  2,500

Medical Expense 
  1,310  1,246

Services of Spouse 
  N.A.     500

Society/Companionship/Sexual Relations 
  N.A.     500

                             

$7,310 $4,746

Floyd Hulbert appeals only in conjunction with his award.  He does not challenge the verdict as to Louella Hulbert.  

ANALYSIS

Standard of Review

In a timely-filed post trial motion, Floyd moved for a new trial.  The standard to be applied by the trial court in exercising its discretion is whether the decision of the jury was against the manifest weight of the evidence.  
Joel R. v. Board of Education of Mannheim School District 83,
 
292 Ill. App. 3d 607, 686 N.E.2d 650 (
1997), 
Tedrowe v. Burlington Northern, Inc.
, 
158 Ill. App. 3d 438, 511 N.E.2d 798 (1987).  Following denial of his motion, Plaintiff appealed to this court.  Our standard for reviewing the issue presented on appeal is whether the trial court abused its discretion in denying the motion. 
 
Maple v. Gustafson,
 
151 Ill.2d 445, 603 N.E.2d 508 (1992); 
Blakey v. Gilbane Building Corp.,
 
303 Ill. App. 3d 872, 708 N.E.2d 1187 (1999), 
Moran v. Erickson,
 297 Ill. App. 3d 342, 696 N.E.2d 780 (
1998).   We, therefore, seek to determine whether there was sufficient evidence in the record to support the jury's assessment of damages and the court's denial of plaintiff's prayer for a new trial.

The Jury's Apportionment of Damages

Plaintiff has suggested in his brief that the jury, having accepted that Floyd had pain and medical expenses, was legally bound to also find disability and aggravation.  He argues in support of his desired result that he presented a witness who testified affirmatively to those elements and who was not impeached or contradicted.  
He contends that the jury could not ignore that testimony and refuse to impose additional damages.  The court believes this argument lacks merit.

The jury is, collectively, the finder of fact.  The jurors are instructed on how to perform this function properly.  In this case, the record shows that they were told:

"In considering the evidence in this case you are not required to set aside your own observation and experience in the affairs of life but you have a right to consider all the evidence in the light of your own observation and experience in the affairs of life.  

You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them.  In determining the credit to be given any witness you may take into account his ability and opportunity to observe, *** and the reasonableness of his testimony considered in the light of all the 

evidence in the case.  

With respect to the claim of Floyd Hulbert for his own personal injuries, if you decide for him on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the negligence of the defendant***   

The aggravation of any pre-existing ailment or condition.

The disability resulting from the injury.

The pain and suffering experienced as a result of the injuries.

The reasonable expense of necessary medical care, treatment, and 

services received.

Whether any of these elements of damages has been proved by the evidence is for you to determine."

None of these instructions, given at the behest of Plaintiff, directs the jury that it is obligated to find aggravation and/or disability simply because it determines that plaintiff had pain and expense.  Indeed, all guidance is to the contrary--damages are only to be given for injury proven to the satisfaction of the jury to have occurred and to have been caused by the negligence of Defendant.

Similarly, the case law discourages such a lock-step approach to damages, emphasizing instead great deference to the jury's award decision.  Looking first at damages for claimed disability, this court, in 
White v. Leuth
, 
283 Ill. App. 3d 714, 670 N.E.2d 1143 (
1996) found that a logical link could be found between pain and suffering and medical expenses, but rejected a connection between those elements and the plaintiff's claimed disability.  See also 
Natalino v. JMB Realty Corp.
, 
277 Ill. App. 3d 270, 660 N.E.2d 138 (
1995), and
 
Hastings v. Gulledge
, 272 Ill. App. 3d 861, 651 N.E.2d 778 (
1995). 

While there appear to be no cases directly dealing with a failure to award damages for aggravation even though compensating the plaintiff for pain and suffering and medical expenses, the Fourth District held in 
Craigmiles v. Egan
, 248 Ill. App. 3d 911, 618 N.E.2d 1242 (
1993), that a jury is free to conclude, even in the face of a claim of aggravation, that there has not been new or additional pain and suffering caused by the accident.  Moreover, there has been some extremely constructive guidance from our supreme court for evaluating this issue.  

In 
Snover v. McGraw
, 172 Ill.2d 438, 667 N.E.2d 1310 (1996), the supreme court not only reiterated the jury's entitlement to substantial deference but also rejected a 
per se
 link between even pain and suffering and medical expenses.  The Second District has similarly rejected such a 
link. See 
Zuder v. Gibson
, 
288 Ill. App. 3d 329, 680 N.E.2d 483 (
1997).   What can be gleaned from these cases is that all of these elements of potential damage are independent, that they require proof of their existence, and that 
in the process of evaluating the evidence and arriving at a verdict and assessment of damages at trial,
 
they are proven when the jury, as finder of fact, says that they have been.

In the context of this appeal, w
e now turn our attention more specifically to the issue of whether the jury's decision not to award damages to Floyd for aggravation and disability was against the manifest weight of the factual evidence developed at trial.

The court initially finds it significant that the jury did
 
award 
Louella damages for disability and aggravation of a pre-existing condition.  This fact suggests that the jurors understood the concepts of those elements of damage and applied some standard in determining what, if anything, should be assessed against the defendant for them.

We also find it significant that the jury asked for, and was given, the transcript of Dr. Lee's testimony.  Although the record is silent as to why it was requested, there is no question of what information it would have revealed.  It showed that Dr. Lee had actually treated Louella since November 1993 and was well-acquainted with the nature and extent of her various ailments.  He was in possession of the history and records of his patient which would have allowed him to make a reasonable and meaningful comparison of her condition before and after the March 1995 accident.

Dr. Lee's testimony clearly disclosed, on the other hand, that he had no such knowledge about Floyd.  He confirmed that he had never previously examined Floyd and had no prior medical information against which to evaluate any change in his condition after the accident.  In addition, the x-rays ordered by Dr. Lee were negative for any fracture.  Floyd never presented any further complaints to trigger the testing for a "sed" rate to determine if there actually was any "flaring" of the ankylosis spondylitis.  All that Dr. Lee was able to say was that Floyd reported pain and a need to specially "rearrange" his body to stand up straighter, and that Floyd seemed more "bent over" after the accident.  When asked the basis for his opinion that the prior condition had been aggravated, Dr. Lee stated:

"I felt that Floyd's disease process was pretty much set.  Once you're fused, you can't be more fused.  The bone can't get too much more thicker, and your mobility can't get too much more worse.  You're frozen in one position.

I think that this motor vehicle accident actually worsened him by weakening his muscles and allowing him to bend over forward farther so that the bones now sag.  Nothing was holding them up.  And I think that his process that he's gone through since the accident time period is basically a problem from the accident and from these muscles being inflamed, strained."

The transcript showed no objective or ascertainable medical foundation for such a conclusion.   Dr. Lee's testimony amounted to nothing more than Floyd's purely subjective complaints articulated through his doctor.  The only significant supplemental information disclosed by Floyd's own testimony was that he was unable to walk his dog as frequently after the accident as he could before it.  This, too, was purely subjective, and the jury was entitled to accord it little or no weight.  
Snover 
, 172 Ill.2d at 449, 667 N.E.2d at 1316.

Thus, considering all of the evidence in the light most favorable to Defendant, it is not clearly apparent either that Plaintiff suffered aggravation of his ankylosis spondylitis or disability as a result of the March 1995 accident or that a verdict in accordance with such a conclusion is palpably erroneous, arbitrary, or unsubstantiated.  
Joel R.
, 
292 Ill. App. 3d at 613, 686 N.E.2d at 
 655 (1997).  Accordingly, we find that the verdict declining to award damages for aggravation of a pre-existing condition or for disability was not against the manifest weight of the evidence.  

The Court's Denial of Plaintiff's Motion for New Trial

A motion for a new trial is addressed to the sound discretion of the trial court, and the court's ruling on that motion will not be disturbed absent an abuse of discretion. 
Maple v. Gustafson,
 
151 Ill.2d at 454. 603 N.E.2d at 512 (1992); 
Moran
, 
297 
Ill. App. 3d at 352, 696 N.E.2d at 787 (
1998).  Under this abuse of discretion standard, we will reverse the decision of the trial court only if no reasonable person could take the view which he adopted.

The order entered by the trial court from which Plaintiff has appealed plainly indicates that the judge gave independent consideration to Floyd's claims for disability and for aggravation of a pre-existing condition.  It also stated that "the verdict is not contrary to [the] manifest weight of [the] evidence, which was essentially 
subjective
 evidence." (Emphasis in original.)

Our own review confirms that there was ample support in the record for the jury's verdict.  It is also apparent from the Order that the trial court gave adequate consideration to the evidence and appropriate deference to the fact-finding function of the jury.  We find no abuse of discretion.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Rock Island County  denying plaintiff, Floyd Hulbert, a new trial is affirmed.

Affirmed.

BRESLIN and SLATER, J.J., concur.