2024 IL App (1st) 231585-U

No. 1-23-1585

Order filed October 24, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JENNIFER SCHONFELD, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 2020 L 003813 |
| | ) | |
| THOMAS M. TORTORICI and ANDREW J. NELSON, | ) | Honorable |
| | ) | Israel A. Desierto and |
| Defendants | ) | Maura Slattery Boyle, |
| | ) | Judges, presiding. |
| (Thomas M. Tortorici, Defendant-Appellee). | ) | |

_____

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The court did not abuse its discretion in denying plaintiff's motion for a new trial where the jury's failure to award damages for pain and suffering and loss of normal life was not against the manifest weight of the evidence or inconsistent with the award for medical expenses.

¶ 2   Plaintiff Jennifer Schonfeld appeals from the jury verdict in her personal injury suit against

defendant Thomas M. Tortorici. The jury awarded Schonfeld damages for medical expenses and

loss of wages, but not for pain and suffering or loss of normal life, for injuries Schonfeld sustained when Tortorici struck her with his vehicle.[1] On appeal, Schonfeld argues that the trial court erred in denying her motion for a new trial. We affirm.

¶ 3     Schonfeld filed a personal injury action against Tortorici alleging that his negligence in operating his vehicle proximately caused her injuries. Schonfeld sought damages for medical expenses, loss of wages, pain and suffering, and loss of normal life.

¶ 4     The following facts were adduced at trial.

¶ 5     Schonfeld testified that she was jogging on July 9, 2018. Tortorici's vehicle struck her as she crossed an intersection. Another driver assisted Schonfeld to the sidewalk. After sitting on the sidewalk for 15 minutes, Schonfeld limped home and a roommate drove her to the hospital.

¶ 6     Schonfeld further testified that she took two weeks off from work after the accident. Around that time, she had difficulty dressing, carrying a laundry basket, and turning her body while driving. Her shoulder became "stuck" if she kept her arm in a certain position, causing her near daily pain, and made a clicking sound that she demonstrated for the jury. At the time of trial, she was unable to run, attend hip hop classes, rock climb, or lift more than 30 pounds, and walking her dog was difficult. Prior to the injury, Schonfeld helped facilitate therapy for individuals at a treatment facility, a role that required her to physically engage with patients. Following the injury, she could only work as a "desk social worker." Schonfeld stated that she had not yet undergone surgery due to the pandemic and her wedding.

---

[1] The Honorable Israel A. Desierto presided at trial. The Honorable Maura Slattery Boyle presided over the hearing on the posttrial motion.

¶ 7    Tortorici, called as an adverse witness, testified that he did not drive in front of Schonfeld; rather, she ran into his vehicle. According to Tortorici, Schonfeld rejected his assistance and walked away.[2]

¶ 8    Schonfeld published the evidence depositions of Dr. Kevin Tu and Dr. Blair Rhode, who stated that they examined Schonfeld in July and August 2018, respectively, for injuries which they opined were caused by the accident. Both doctors found weakness and loss of motion in her right shoulder and ordered MRIs, which revealed inflammation of the rotator cuff and loss of cartilage. Dr. Tu testified that Schonfeld exhibited a positive reaction to pain stimuli, and Rhode agreed with Schonfeld's counsel that Schonfeld's condition is "typically painful." In April 2021, Dr. Rhode opined that "if [Schonfeld] was unwilling to live with her symptoms she would be a candidate for surgery" to evaluate the damage to her shoulder and possibly repair her rotator cuff. The cost of surgery, including a potential rotator cuff repair, was estimated at $43,500, with additional physical therapy two to three times per week for four to five months costing $325 per visit. Each follow-up visit for a cortisone injection was approximated at $900.

¶ 9    Schonfeld also called two billing professionals who testified regarding her medical bills.[3]

¶ 10   Margaret Finn, Schonfeld's physical therapist, testified that after several months of physical therapy, Schonfeld's range of motion in her shoulder had improved, but she still reported pain. On October 25, 2018, Schonfeld reported that the shoulder pain was "not too bad," but she was concerned about "clicking." The last session was on October 30, 2018, when Schonfeld

---

[2] The report of proceedings lacks the testimony from two additional adverse witnesses called by plaintiff. This does not preclude us from reviewing the issues on appeal.

[3] Plaintiff's medical bills were entered into evidence but are not included in the record on appeal. This does not preclude us from reviewing the issues on appeal.

reported pain in her shoulder after walking an increased distance. On cross-examination, Finn stated that she believed that Schonfeld needed additional therapy after October 30, 2018, and Schonfeld was not formally discharged because she did not achieve all her goals.

¶ 11    Maureen Minor, Schonfeld's former roommate, testified that she knew of Schonfeld's shoulder issues following the incident, including the "popping." Schonfeld ran less, complained of pain, and occasionally wore a sling. When they moved apartments, they hired movers to assist because Schonfeld had issues with lifting or carrying objects. On cross-examination, Minor stated that she was still a friend of Schonfeld and knew about the lawsuit.

¶ 12    Michael Bolnick, Schonfeld's fiancé, testified that he heard clicking in her shoulder "a fair amount," and saw her "wince" when it happened. Schonfeld complained that she lost sleep due to pain a "[f]ew times a week" and asked Bolnick to assist her in placing items in cabinets or on top shelves. On cross-examination, Bolnick stated that he did not know whether she asked him to lift things because of her shoulder issue or because she could not reach.

¶ 13    In his case-in-chief, Tortorici testified that following the incident, he approached Schonfeld to see if she was hurt, offered assistance, and did not call the police because Schonfeld stated that she was "okay."

¶ 14    The jury found Tortorici liable for Schonfeld's injuries and awarded Schonfeld damages totaling $100,000, comprising $98,175 for medical expenses and $1825 for lost salary. It awarded "$0" for loss of normal life and for pain and suffering. The jury then reduced the total damages by 40%, the percentage of negligence it attributed to Schonfeld, and assessed Schonfeld total recoverable damages of $60,000.

¶ 15    On May 2, 2023, Schonfeld filed a motion for a new trial, arguing that the jury's failure to award damages for her loss of normal life and pain and suffering was against the manifest weight of the evidence. Schonfeld requested a new trial on both liability and damages. According to a summary of her bills attached to the motion, at the time of trial, she had expended $34,953.48 in medical care and physical therapy. Schonfeld estimated the future medical bills to total $64,800.

¶ 16    Schonfeld attached, *inter alia*, her hospital and physical therapy records, as well as transcripts of her trial testimony and the deposition testimony of the two treating doctors. The motion was heard by a different judge than the judge who presided over the jury trial. The court was not provided with testimony from several trial witnesses, including Finn, Minor, and Bolnick.

¶ 17    After a hearing, the court denied the motion, finding that surgery was not recommended until April 2021, after "questions about the plaintiff's completion of the treatment regimen." The court noted the deference given to the jury, which reviewed the evidence and assessed the credibility of the witnesses.

¶ 18    On appeal, Schonfeld contends that the court abused its discretion in denying her motion for a new trial where the jury's verdict awarding $60,000 in medical bills and lost salary, without awarding damages for pain and suffering or loss of normal life, was against the manifest weight of the evidence. In particular, Schonfeld argues that the verdict ignored her pain and suffering and loss of her normal life after her injury.

¶ 19    An appellate court will reverse a trial court's ruling on a motion for a new trial if the court abused its discretion. *Stamp v. Sylvan*, 391 Ill. App. 3d 117, 123 (2009). In making this determination, we consider whether the jury's verdict was supported by the evidence. *Stift v. Lizzadro*, 362 Ill. App. 3d 1019, 1028 (2005). If the court, in exercising discretion, finds the verdict

is against the manifest weight of the evidence, it should grant a new trial. *Stamp*, 391 Ill. App. 3d at 123. "A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any evidence." (Internal quotation marks omitted.) *Id*.

¶ 20    A jury's damage award "is entitled to substantial deference," as the determination is a question of fact within the discretion of the jury. *Snover v. McGraw*, 172 Ill. 2d 438, 447 (1996). An appellate court will not disturb a jury's award of damages unless (1) a proven element of damages was ignored, (2) the verdict resulted from passion or prejudice, or (3) the award bears no reasonable relationship to the loss suffered. *Id*. "[A] jury may award pain-related medical expenses and may also determine that the evidence of pain and suffering was insufficient to support a monetary award." *Id.* at 448. An award for pain and suffering "is especially difficult to quantify," and a jury must draw upon "real life experiences in making an award." *Id*. at 448-49.

¶ 21    If the evidence clearly indicates that the plaintiff suffered a serious injury, a verdict for medical expenses alone may be inappropriate. *Id*. at 449. In determining whether the plaintiff suffered a serious injury, "the trial court should consider the distinction between subjective complaints of injury and objective symptoms." *Id*. A jury may choose not to believe a plaintiff's testimony about her pain where evidence of the injury is contradicted or "merely based on the subjective testimony of the plaintiff." *Stift*, 362 Ill. App. 3d at 1029.

¶ 22    As an initial matter, Schonfeld contends that because her motion for a new trial was heard by a judge who lacked prior involvement in the case, any rationale for deferring to the court's decision in denying the motion does not apply. See, *e.g.*, *Stamp*, 391 Ill. App. 3d at 123 ("the presiding judge in passing upon the motion for a new trial has the benefit of his previous

observation of the appearance of the witnesses, their manner in testifying, and of the circumstances aiding in the determination of credibility" (internal citation and quotation marks omitted)). Schonfeld posits that the posttrial court did not observe "the appearance of the witnesses and their manner in testifying or circumstances that occurred in the court room that might have aided [the court] in determining credibility." Schonfeld maintains that the court's denial of the motion for a new trial should not be given the usual deference because it "did not have the entire trial transcript to consider."

¶ 23    While the posttrial judge did not preside over the trial and lacked a complete record of the trial court proceedings, it was Schonfeld who did not provide the entire trial transcript to the court, omitting the testimonies of several witnesses. See *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) ("A party cannot complain of error which he induced the court to make or to which he consented."). Further, the question of credibility is determined by the finder of fact, here the jury, not the judge. See *Snover*, 172 Ill. 2d at 447. As noted, the jury's original determination is due "substantial deference." *Id.*

¶ 24    Here, the verdict, including the calculation of damages, was based upon the evidence where Schonfeld's reported pain and suffering primarily involved subjective symptoms rather than objective findings of injury. See *id.* at 449. Schonfeld's pain was self-reported, and so the jury's assessment of her credibility is critical. See *id.* The jury could have chosen to believe that Schonfeld's reports of her pain were unconvincing, given discrepancies between Schonfeld's version of events and Tortorici's and Schonfeld's failure to complete physical therapy. Given this record, we cannot say that the findings of the jury were unreasonable, arbitrary, and not based upon any evidence. See *Stamp*, 391 Ill. App. 3d at 123.

¶ 25    Schonfeld nevertheless contends that the evidence showed that she sustained a serious shoulder injury, and so the jury's failure to award damages for pain and suffering and loss of normal life was against the manifest weight of the evidence. Schonfeld argues that the evidence established objective symptoms, including that she sustained an injured rotator cuff, decreased range of motion, and limitations on lifting weight and reaching overhead. Additionally, Schonfeld experienced a painful clicking in her shoulder, which she demonstrated to the jury, and had been recommended surgery as a solution.

¶ 26    As noted, the jury was free to draw reasonable inferences about Schonfeld's past and future pain and suffering and loss of normal life from the evidence adduced at trial. Although Schonfeld, Minor, and Bolnick testified about Schonfeld's expressed pain and limitations due to the injury, the jury could make its own credibility determinations and reject or accept their testimony. See *Stift*, 362 Ill. App. 3d at 1029. Additionally, the jury could have considered that Schonfeld did not return to physical therapy after October 2018 and had not undergone exploratory surgery to determine the source of the reported pain. Therefore, the lack of objective evidence provided to the jury as to Schonfeld's pain and suffering and loss of normal life could support a verdict omitting such damages, and as such the failure to award those damages was not against the manifest weight of the evidence.

¶ 27    Schonfeld also argues that the jury's failure to compensate her for pain and suffering while also awarding her $98,175 in past and future medical expenses was inconsistent. Schonfeld contends that in awarding damages for past and future medical expenses, including future surgery expenses, the jury acknowledged that she suffered serious injuries that required significant treatment.

¶ 28 Although the jury awarded compensation for past and future medical expenses, including, in part, future surgery costs, a jury could have concluded from the evidence that past and future medical expenses were warranted but that Schonfeld's injury was not serious enough to warrant damages for pain and suffering and loss of normal life. Again, the evidence of Schonfeld's pain was primarily subjective. See *Snover*, 172 Ill. 2d at 449. Schonfeld's impaired range of movement improved with physical therapy. The jury could have interpreted the primary recurring objective symptom, the "clicking" sound in Schonfeld's shoulder, as a less serious medical condition for which damages for pain and suffering and loss of normal life were not warranted. As such, we will not overturn the jury's verdict on this basis. See *Stamp*, 391 Ill. App. 3d at 123.

¶ 29 Because the jury's determination of damages was not against the manifest weight of the evidence, the posttrial court's denial of the motion for a new trial was not an abuse of discretion. See *Poliszczuk v. Winkler*, 387 Ill. App. 3d 474, 496 (2008).

¶ 30 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 31 Affirmed.